**SO ORDERED.**

**SIGNED this 20 day of August, 2007.**



*Dale L. Somers*
**Dale L. Somers**
**UNITED STATES BANKRUPTCY JUDGE**

_____

OPINION DESIGNATED FOR ON-LINE PUBLICATION BUT NOT PRINT PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In Re: | |
| ERIC JOHN OXLEY, dba Oxley Construction, Inc., dba Arrowhead Construction, dba Arrowhead Framing and DENA LYNN OXLEY, | CASE NO. 05-12382 <br> CHAPTER 7 |
| DEBTORS. | |
| JODIE MOSIER AND TAMARA MOSIER, | |
| PLAINTIFFS, | |
| v. | ADV. NO. 05-5831 |
| ERIC JOHN OXLEY, | |
| DEFENDANT. | |

| | |
|---|---|
| In Re:<br><br>**BRYAN J. OXLEY, dba Oxley Construction, Inc., dba Arrowhead Construction, dba Oxley Const, Inc./Arrowhead Const,**<br><br>        **DEBTOR.** | CASE NO. 05-12384<br>CHAPTER 7 |
| **JODIE MOSIER AND TAMARA MOSIER,**<br><br>        **PLAINTIFFS,**<br><br>v.<br><br>**BRYAN J. OXLEY,**<br><br>        **DEFENDANT.** | ADV. NO. 05-5832 |

**MEMORANDUM OPINION AND ORDER DENYING
PLAINTIFFS' DISCHARGEABILTY COMPLAINTS**

Trial was held on March 6, 2007, on the Complaints to Determine Dischargeability of Debt filed in the above captioned cases. Plaintiffs Jodie Mosier and Tamara Mosier (hereafter "Creditors' or "Mosiers") appeared by Frank M. Ojile. Defendants Eric Oxley and Brian Oxley (hereafter "Debtors") appeared by William H. Zimmerman, Jr. of Case, Moses, Zimmerman & Wilson, P.A. There were no other appearances. The Court has jurisdiction.[1]

---

[1] This Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (b), and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. Furthermore, this Court may hear and finally adjudicate this matter because it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). There is no objection to venue or jurisdiction over the parties.

Pre-petition Debtors contracted with Plaintiffs to build a custom home. The home was substantially completed, and a warranty deed was conveyed by Oxley Construction, Inc. to Plaintiffs. Following closing, various punch list items were not completed by Debtors and four mechanic's liens were filed against the property. Plaintiffs request in their Complaints that they be permitted to proceed in state court against Debtors to determine their damages and such damages be held not dischargeable pursuant to 11 U.S.C. §§ 523(a)(2), (a)(4), or (a)(6).

Following the close of evidence and after hearing the arguments of counsel, the Court took the matter under advisement. It is now ready to rule and, for the reasons stated below, finds that the claim of the Creditors against the Debtors is not excepted from discharge.

**FINDINGS OF FACT.**

On September 11, 2002, Creditors and Oxley Construction[2] entered into a contract for Oxley to build the Mosiers a custom home on North Broadway in Sedgwick, Kansas for $230,520. The project was contractor financed, and Oxleys assured the Mosiers that Oxley had the financial ability to perform the job. The contract included a warranty provision, generally requiring Debtors to remedy any defects in workmanship which appear and of which the Debtors were notified in writing within 12 months from the date of completion. Pursuant to the contract, upon payment of the contract amount and completion of the residence, Oxleys agreed to deliver to Mosiers a sworn statement and waiver of liens showing all claims for labor and material furnished in constructing the home had been paid (or in the alternative a title policy insuring against liens),

---

[2] Both of the individual Debtors filed for relief under Chapter 7 in their own names, dba Oxley Construction Inc. and other named entities. Although in this litigation, some relevant documents were in the name of Oxley Construction, neither the Debtors nor the Mosiers have made any distinction between acts of the corporation and acts of the individual Debtors. The Court likewise will not make any such distinction.

3

to convey the property by warranty deed, and to provide a policy of title insurance. Three contract addenda were executed adding items and changing the contract price.

In September 2002, when the contract with the Mosiers was executed, Oxley Construction was doing well. There were no lawsuits for unpaid bills. It had six to eight jobs and three employees, in addition to the Debtors. The Mosier job was one of the largest. Construction went smoothly, and without major problems, the home was substantially completed by December 2003. Shortly before completion, there was a meeting to discuss outstanding pricing issues. Concessions were made by Oxley, and an agreement reached as to the final price.

Eric Oxley was in charge of the financial affairs of the company. The income and expenses for the various jobs were commingled. Hand written ledgers were kept to track individual job performance, but separate accounts were not maintained by job. During October and November, Oxley used draws on the Mosier job to pay charges for other projects. By December 2003, Oxley knew that the company was a little behind on payments, but it had several jobs open which management thought would allow it to catch up.

An inspection of the house was held on or shortly before the closing date. The parties agreed in writing to a punch list of 23 items which were to be completed by December 19, 2003, with the exception of the staining of the front door. None of the items made the house uninhabitable; they were typical warranty work.

The closing was held on or about December 12, 2003. The remainder due under the contract of approximately $62,000 was paid by Mosiers to Oxley, the one filed mechanic's lien was satisfied and released, Oxley executed a form Indemnity and Affidavit as to Debts, Liens and Possession provided by the title company, and the property was conveyed to the Mosiers by

4

Warranty Deed. At the time of closing, Mosiers and Debtors knew that there were unpaid suppliers in addition to the one who had filed a lien. Mosiers believed the unpaid bills were about $9,000, but apparently that total was significantly more.[3] It is typical at a closing to have outstanding bills. Mosiers requested that the final payment be placed in escrow for the payment of the outstanding bills. Oxley did not agree to this proposal, and Mosiers went forward with the closing knowing there were outstanding bills for the construction of their home. Debtors intended to take care of the bills and thought they could work their way out of their financial difficulties.

The Indemnity and Affidavit as to Debts, Liens and Possession (hereafter "Affidavit") was executed under oath by Oxley Construction, Inc. by Bryan Oxley. The spaces provided to identify unpaid vendors and contractors were not completed. The Affidavit contained representations that "[t]here are no unpaid debts for fixtures, mechanical, electrical, plumbing or similar systems pertaining to the Property nor for appliances, fences, street paving, or any personal property that is located on the Property." Likewise it provided the "[a]ll labor and material used in the construction of improvement on the Property have been paid for and there are now no unpaid labor or material claims against the Property." Oxley agreed "to pay on demand to the purchasers . . . all amounts secured by all liens not identified above . . ., provided said liens either currently apply to the Property, or a part thereof, or are subsequently established against the Property and are created by affiant known by affiant or have an inception date prior to the consummation of this transaction."

---

[3] Mosiers provided evidence of the identity of suppliers with outstanding invoices, but no evidence as to the amount of the claims.

Mosiers moved into the home about two weeks after the closing. In December 2003, there was no reason that the punch list items could not be completed by Oxley. Shortly after the closing, an employee of Oxley went to the home to finish the deck, a punch list item. Because of design changes, the wood already at the site was not sufficient. Because Oxley was not current with its bill with the lumber yard, it would not allow a credit purchase, and the Mosiers paid for the additional wood.

On January 12, 2004, the first of four post-closing mechanic's lien were filed against the property. The additional lien claims were filed on January 29, 2004, February 13, 2004, and March 2, 2004. Tamara Mosier became very upset when notified of the lien filings. In February 2004, Tamara Mosier filed a $32,000 lien for payment against Eric Oxley's personal residence, which was being constructed for him by Oxley Construction. Although the lien was ultimately released, the filing delayed the closing of that property and Eric's infusion of $40,000 into Oxley Construction. Relations between the Mosiers and Debtors soured. Most of the other punch list items were completed by the Mosiers or remain uncompleted.

The mechanic's liens were removed from the Mosiers' property without Mosiers having to make payment to any of the suppliers. The only post-closing expense for construction incurred by the Mosiers is the price of additional lumber for the deck, in an amount of approximately $1000. Although there are suppliers who have not been paid for work performed on the Mosier home, the Mosiers have no liability for these charges.

On March 31, 2005, the Mosiers filed suit against Oxley Construction and the Debtors in Sedgwick County District Court. They alleged that portions of the work (the punch list items) remain unfinished, that subcontractors remained unpaid, and that the representation made in the

6

Case 05-05831    Doc# 23    Filed 08/20/07    Page 6 of 15

Affidavit that there were no unpaid bills was a deceptive practice under the Kansas Consumer Protection Act. They prayed for judgment for damages in excess of $75,000, for a determination of violation of the Kansas Consumer Protection Act, and for costs and fees.

Debtors filed for relief under Chapter 7 on April 25, 2005. Mosiers have not filed a motion for relief from stay to pursue the state court litigation. The dischargeability complaints were filed on November 25, 2005. They seek an order excepting any judgment entered in the state court litigation from discharge.[4] Although the Complaints alleged nondischargeability under §§ 523(a)(2), (a)(4), and (a)(6), the claim under § 523(a)(6) was withdrawn following trial.

**ANALYSIS AND CONCLUSIONS OF LAW.**

**A. The objections to dischargeability pursuant to § 523(a)(2) are denied.**

Subsection 523(a)(2), one basis for Mosiers' dischargeability Complaints, provides in relevant part as follows:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt --
> \* \* \*
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by --
>  (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

The Supreme Court in *Field v. Mans* construed § 523(a)(2)(A) to incorporate the general common law of torts as stated in the Restatement (Second) of Torts (1976).[5] The Tenth Circuit BAP, following the *Field v. Mans* analysis, when considering whether alleged misrepresentations were

---

[4] The propriety of the Mosiers' attempt to rely upon a future state court determination of damages is not addressed by the Court because their dischargeability Complaints fail for reasons other than proof of damages.

[5] *Field v. Mans*, 516 U.S. 59, 70-72 (1995).

sufficient to deny discharge of credit card debt, relied on the Restatement § 525, addressing liability for fraudulent misrepresentation.[6] It provides:

> One who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation.[7]

A misrepresentation is fraudulent if the maker has knowledge of the untrue character of his representation.[8] The frauds included within misrepresentations sufficient to deny discharge must "involve moral turpitude or intentional wrong; fraud implied in law, which may be established without imputation of bad faith or immorality, is insufficient."[9] Fraudulent intent need not be shown by direct evidence and may be inferred from the circumstances. "The bankruptcy court must consider whether the totality of the circumstances 'presents a picture of deceptive conduct by the debtor which indicates an intent to deceive the creditor.'"[10]

Establishing an exception to discharge based upon misrepresentation is often stated to require the following elements: (1) The debtor made a representation; (2) at the time of the representation, the debtor knew it to be false; (3) the debtor made the representation with the intention and purpose of deceiving the creditor; (4) the creditor justifiably relied on the

---

[6] *Chevy Chase Bank FSB v. Kukuk (In re Kukuk)*, 225 B.R. 778, 784 (10th Cir BAP 1998).

[7] Restatement (Second) of Torts § 525 (1976).

[8] *Id.* at § 526, cmt. a.

[9] 4 *Collier on Bankruptcy* ¶ 523.08[1][d] (Alan N. Resnick & Henry J. Sommer eds.-in-chief, 15th ed. rev. 2007).

[10] *Groetken v. Davis (In re Davis)*, 246 B.R. 646, 652 (10th Cir. BAP 2000), *quoting* 3 William L. Norton, Jr., *Norton Bankruptcy Law and Practice 2d* 47:16, n. 62 (1999).

8

representation; and (5) the creditor sustained the alleged loss and damage as a proximate result of the representation having been made.[11] The creditor has the burden of proof on all elements by a preponderance of the evidence.[12] Courts generally construe the exceptions to discharge liberally in favor of the debtor; the reasons to deny discharge must be real and substantial.[13] This narrow construction assures the fresh start of the honest but unfortunate debtor.[14]

In this case, Mosiers allege fraud at two times. First they allege fraud when the construction contract was executed in September, 2002. It is plaintiff's contention that Oxleys misrepresented their financial ability to perform the contract. There is evidence that Oxleys assured Mosiers of their ability to finance the job, but absolutely no evidence that Oxleys knew this assurance to be false when made or that the assurance was made with intent and purpose of deceiving the Mosiers. Rather, the evidence is that the construction business was doing well in the fall of 2002 and that Oxleys obtained financing for the job. The objection to discharge under § 523(a)(2)(A) as to representations made when the construction contract was made is denied.

The second time period in issue is the time of closing. Mosiers claim that discharge of their claim should be denied because of fraudulent misrepresentations regarding the payment of outstanding bills for supplies and subcontractors and the completion of the punch list warranty work. It is true that the Affidavit contains false statements regarding the existence of unpaid

---

[11] *E.g., Fowler Bros. v. Young (In re Young),* 91 F.3d 1367, 1373 (10th Cir. 1996) (stating five elements but requiring that creditor's reliance be reasonable); *Field v. Mans*, 516 U.S. at 74 (holding that creditor reliance must be justifiable).

[12] *Grogan v. Garner*, 498 U.S. 279, 287 (1991).

[13] *Equitable Bank v. Miller (In re Miller)*, 39 F.3d 301, 304 (11th Cir. 1994).

[14] *Id.*

debts for goods, labor, and material used in construction of the home. It is also true that the Debtors knew that these statements were false. Hence, the first and second elements of a § 523(a)(2) claim are present.

However, the remaining three elements are not satisfied. As to the third element, there is no evidence that the false statements in the Affidavit were made with intent and purpose of deceiving Mosiers. In fact, the Mosiers and Bryan Oxley had discussions about outstanding bills at the closing. Such discussions negate Oxleys' alleged intent to defraud when falsely stating there were no outstanding charges.

As to the fourth element, there is no question that Mosiers knew of outstanding charges. Therefore Mosiers could not have justifiably relied upon the false representations in the Affidavit.

Finally, there is no evidence that Mosiers sustained any loss because of the falsity of the Affidavit. The subsequently filed mechanic's liens were released without Mosiers making payment to the lien holders. There was no litigation and no foreclosure. The Mosiers got good title to the property and did not pay twice. Mosiers have no legal liability to unpaid suppliers and contractors who did not file liens, and the time to file liens has expired.

There was no fraud for purposes of § 523(a)(2)(A) arising from Oxley's failure to complete the punch list items. Oxleys represented at closing that the work would be completed, but there is no evidence that this representation was false when made. The evidence is that Oxleys intended to complete the work and started to do so. After the first post-closing lien was filed on the Mosiers' property and the Mosiers filed a lien on Eric Oxley's property, the relationship was so poisoned that work was not completed. Non-completion of the punch list may

10

be the basis for a breach of contract claim, but it does nor provide a basis to deny discharge of that claim.

There is a total absence of intentional wrongdoing by the Debtors. Discharge cannot be denied under § 523(A)(2) in the absence of immoral conduct or bad faith. The Mosiers have at most a breach of contract claim against the Debtors. The Code does not except contract damages from discharge unless there is intentional wrong and moral turpitude, which are absent from the facts of this case.

**B. The objections to dischargeability pursuant to § 523(a)(4) are denied.**

As an alternative basis to except their claim from discharge, Mosiers allege Oxleys engaged in fraud or defalcation while acting in fiduciary capacity, or embezzlement, within the meaning of § 523(a)(4). The factual basis for the objections is the admitted fact that Oxleys used the draws on the construction loan and funds paid at closing by Mosiers to satisfy outstanding invoices relating to jobs other than construction of the Mosier home.

Subsection 523(a)(4) provides as follows:

> (a) A discharge under section 727 . . . of this title does not discharge
> an individual debtor from any debt –
> \* \* \*
> (4) for fraud or defalcation while acting in a fiduciary capacity,
> embezzlement, or larceny;

Two elements are required to prevent discharge of a debt under the fraud or defalcation portion of this subsection: (1) A fiduciary relationship between the debtors and the creditor; and (2) fraud or defalcation committed by the debtor in the course of that fiduciary relationship.[15] In the Tenth Circuit, a fiduciary relationship exists for purposes of § 523(a)(4) only if there is an express or

---

[15] *In re Young*, 91 F.3d at 1371.

technical trust.[16] "Neither a general fiduciary duty of confidence, trust, loyalty, and good faith, nor an inequality between the parties' knowledge or bargaining power is sufficient to establish a fiduciary relationship for purposes of dischargeability."[17] A technical trust for purposes of the exception to discharge may arise from federal or state statute.[18] In addition, under the Tenth Circuit's bankruptcy case law, "to find that a fiduciary relationship existed under § 523(a)(4), the court must find that the money or property on which the debt at issue was based was entrusted to the debtor."[19] Although fiduciary duty is narrowly defined, defalcation is broadly construed. Defalcation has been defined as the "misappropriation of trust funds or money held in any fiduciary capacity."[20] In an action under § 523(a)(4), defalcation includes innocent as well as intentional or negligent defaults.[21]

In this case, the Court finds no fiduciary relationship for purposes of § 525(a)(4). There is no evidence of an express trust. Mosiers' suggestion that the funds paid at closing be segregated was not adopted. Although there are statutes in some states which create a fiduciary relationship in the context of construction contracts,[22] the Mosiers provide no citation to a Kansas or federal

---

[16] *Id.*

[17] *In re Young*, 91 F.3d at 1372 (citations omitted).

[18] *Cundy v. Woods (In re Woods)*, 284 B.R. 282, 288 (D. Colo. 2001).

[19] *In re Young*, 91 F.3d at 1371.

[20] *Lewis v. Scott (In re Lewis)*, 97 F.3d 1182, 1186 (9th Cir. 1996) (*quoting Black's Law Dictionary* 417 (6th ed. 1990)).

[21] *Id.*

[22] *See e.g., Fowler & Peth, Inc. v. Regan (In re Regan),* 477 F.3d 1209 (10th Cir. 2007) (holding that Colorado Mechanic's Lien Trust Fund Statute, which requires a contractor who receives funds for its work on construction project to hold funds in trust for the payment of subcontractors, laborers, and material suppliers, creates an express or technical trust as required for a fiduciary relationship for

12

statute creating a fiduciary relationship under the circumstances presented, and the Court's own research has found none. In addition, there is no evidence of a defalcation. Since there was not a fiduciary relationship, there was no misappropriation of trust funds held in a fiduciary capacity. Further, even assuming a fiduciary relationship, Mosiers offered no evidence of the amount of a claim arising from breach of that relationship. The Mosiers' claim is not excepted from discharge under the fiduciary relationship portion of § 524(a)(4).

Section 524(a)(4) also excepts from discharge claims for "embezzlement or larceny." This portion of the statute does not require a fiduciary relationship. "Embezzlement, for purposes of this section, is the 'fraudulent appropriation of property of another by a person to whom such property has been entrusted or into whose hands it has lawfully come."[23] Larceny, on the other hand, requires that "the original taking of the property was unlawful."[24] In this case, because the funds allegedly used wrongfully were loan draws to which Oxley was entitled or funds given by Mosiers to Debtors, only embezzlement need be considered.

When considering whether embezzlement has occurred, the courts examine the terms by which the debtor came to have title to the funds. "Obligations sufficient to support a claim of embezzlement are ones which make the debtor's discretionary use of the payment, prior to

---

purposes of § 524(a)(4))*; Kriegish v. Lipan (In re Kriegish),* 275 B.R. 838 (D.E.D. Mi. 2002) (holding that once contractor receives funds for construction project, the Michigan Building Contract Fund Act imposes a fiduciary duty regarding the use of funds)*; Allen v. Romero (In re Romero)*, 535 F.2d 618 (10th Cir. 1976)(holding under Bankruptcy Act, New Mexico statute, that provides for revocation of a contractor's license if he diverts funds or property from one obligation or purpose to another, imposes on contractor who has been advanced money pursuant to construction contract a fiduciary duty for purposes of dischargeability of debt on the grounds of fraud).

[23] *Belfry v. Cardozo (In re Belfry)*, 862 F.2d 661, 662 (8th Cir. 1988) (*quoting In re Schultz*, 46 B.R. 880, 889 (Bankr. D. Nev. 1985)).

[24] 4 *Collier on Bankruptcy* ¶ 523.10[2].

complying with the obligations, improper."[25] Where the obligation undertaken by the debtor can be fully preformed without regard to how the specific funds are used, there is no embezzlement.[26] In addition, there can be no embezzlement without fraudulent intent, even when a relationship may imply some sort of trust by virtue of the debtor holding funds of another.[27]

In this case, there is no evidence to support denial of discharge of Mosiers' claim based upon embezzlement. At closing, Mosiers, although suggesting an agreement restricting use of the funds, continued with the closing when that suggestion was rejected. Mosiers transferred funds to Oxley without an agreement that they would be used for a specific purpose. There was just an understanding that Oxley would pay the invoices related to the construction of the Mosiers' home. Oxleys could have fully performed without devoting the specific payment made at closing to this purpose. Likewise, as to the construction loan draws, there is no evidence of an agreement regarding their use. As to both sources of funding, when transferred, the funds became the property of Oxley. One cannot embezzle one's own property.

In addition, there was no fraud. Oxleys handled the funds consistent with their customary business practices, whereby payments on specific jobs were not segregated and were deposited to the general account and used for payment of all obligations of the contractor. Oxleys had a reasonable belief they were entitled to use the funds for business purposes other than payment of bills for the construction of the Mosiers' home.

---

[25] *In re Belfry*, 862 F.2d at 663.

[26] *Id.*

[27] *Maneval v. Davis (In re Davis)*, 155 B.R. 123, 130 (Bankr. E.D. Va. 1993).

Finally, the Court notes that there is no evidence of loss to the Mosiers resulting from the alleged embezzlement. All of the liens on Mosiers' home have been released without charge to Mosiers. As to any unpaid suppliers, Mosiers have no liability and the time for filing any liens has expired.

The claim of Mosiers against Debtors is not excepted from discharge under § 523(a)(4).

**CONCLUSION.**

For the foregoing reasons, the dischargeability Complaints are denied. Mosiers have not satisfied the elements to except the claim under §§ 523(a)(2) or (a)(4). Mosiers' claims are for breach of contract, not for fraud, breach of fiduciary relationship, or embezzlement.

The foregoing constitute Findings of Fact and Conclusions of Law under Rule 7052 of the Federal Rules of Bankruptcy Procedure which makes Rule 52(a) of the Federal Rules of Civil Procedure applicable to this matter. A judgment based upon this ruling will be entered on a separate document as required by Federal Rule of Bankruptcy Procedure 9021 and Federal Rule of Civil Procedure 58.

**IT IS SO ORDERED.**

###